UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

August 14, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:  *Natalie M. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
     Civil No. 23-1525-CDA

Dear Counsel:

On June 6, 2023, Plaintiff Natalie M. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 10, 13, and 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on January 15, 2019 and December 30, 2019, respectively, alleging a disability onset of November 9, 2018. Tr. 144-45, 162-71. Plaintiff's claims were denied initially and on reconsideration. Tr. 111-16. On January 13, 2020, an Administrative Law Judge ("ALJ") held a hearing. Tr. 33-65. Following the hearing, on March 26, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 12-32. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constituted the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 1144 06–07 (2000); *see also* 20 C.F.R. § 422.210(a). Having exhausted all administrative remedies, Plaintiff filed action for judicial review, and on October 9, 2021, this Court remanded the case to the Commissioner. Tr. 749. The Appeals Council, on February 15, 2022, vacated the final decision of the Commissioner and

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on June 6, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Natalie M. v. O'Malley*
Civil No. 23-1525-CDA
August 14, 2024
Page 2

remanded the case to a separate ALJ for a new hearing. Tr. 750-56. On February 22, 2023, the ALJ held a hearing, Tr. 678-703, and on April 5, 2023 the ALJ denied Plaintiff's claims for DIB and SSI. Tr. 649-77. Again exhausting all administrative remedies, Plaintiff filed this second action for judicial review.

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff did not engage "in substantial gainful activity since November 9, 2018, the alleged onset date[.]" Tr. 654. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "cervical and lumbar degenerative disc disease; fibromyalgia; diabetes mellitus with peripheral neuropathy; obesity; anxiety; and depression[.]" Tr. 655. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "thyroid disease, asthma, allergies, mild left carpal tunnel syndrome, osteoarthritis of the right shoulder, urinary incontinence, and migraines." Tr. 655. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 657. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is further limited to: never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; never unprotected heights or moving mechanical parts; no jobs that require exposure to very bright lights or loud noises; occasional use of the bilateral upper extremities for pushing and pulling; occasional use of the bilateral lower extremities for the use of foot controls; performing simple, routine tasks; cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas; jobs in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting; occasional interaction with coworkers, the public and supervisors; using a cane only to ambulate away from the work station; and no jobs that require exposure to vibration.

Tr. 661.  The ALJ determined that Plaintiff was unable to perform past relevant work as a child daycare worker (DOT[3] #359.677-018) but could perform other jobs that existed in significant numbers in the national economy.  Tr. 669.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 670.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because their decision "reflects a critical misunderstanding of Plaintiff's severe fibromyalgia[.]"  ECF 11, at 8.  Specifically, Plaintiff alleges that the ALJ improperly increased her burden by "relying on objective evidence consisting of physical examination findings and diagnostic imaging."  ECF 11, at 10.  Plaintiff contends that the ALJ improperly contrasted Plaintiff's trigger point medical evidence with objective evidence that is irrelevant to the severity or limiting effects of fibromyalgia. ECF 11, at 10.  Defendant counters that the ALJ "complied with regulation, agency policy, and Fourth Circuit precedent when evaluating Plaintiff's subjective claims related to fibromyalgia."  ECF 13, at 6.  Defendant maintains that the "ALJ evaluated [Plaintiff's] fibromyalgia by comparing her allegations with all relevant evidence, noting inconsistencies between Plaintiff's allegations and the record."  ECF 13, at 6.

An ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."  *Arakas v. Comm'r, Soc.*

---

[3] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020). In *Arakas*, the ALJ "discredited [the claimant's] statements about the severity, persistence, and limiting effects" of her fibromyalgia symptoms "because [the ALJ] did not find [the symptoms] to be 'completely consistent with the objective evidence.'" *Id.* at 96. Because the claimant "was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,'" the Fourth Circuit held that the ALJ "applied an incorrect legal standard" by discrediting the claimant's complaints "based on the lack of objective evidence corroborating them." *Id.* (brackets in original). The court further concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.* (citation omitted).

Governed by the standard articulated in *Arakas*, the Court agrees that the ALJ erred in evaluating Plaintiff's fibromyalgia. At the first step, the ALJ found fibromyalgia to be a medically determinable impairment. Tr. 655. At the second, the ALJ assessed the intensity and persistency of the alleged symptoms to determine how they affected Plaintiff's ability to work and whether she was disabled. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The ALJ stated that they "considered the longitudinal record, because symptoms of fibromyalgia can wax and wane." Tr. 662. However, the ALJ acknowledged "that many symptoms of fibromyalgia are subjective, such as the fatigue and pain alleged by [Plaintiff] in this case," and physicians examining a claimant can and will "note if [a] claimant appears to be in acute distress due to pain or appears tired or fatigued." Tr. 662. The ALJ then evaluated Plaintiff's fibromyalgia, stating that Plaintiff:

> alleges she is in so much pain that she is unable to stand for more than a couple of minutes, sitting hurts, and her pain precludes the performance of any work. However, in this voluminous record, there is no single notation of the claimant being in any acute distress, which you would expect to see given the alleged severity of her pain. With respect to fatigue and feeling tired, the only notations in the medical evidence are the claimant's subjective complaints of fatigue and feeling tired, and her infrequent denial of fatigue. No physician noted during an examination that she appeared tired or fatigued. The undersigned finds that the pain and limiting effects of the claimant's allegations are not as severe as alleged and support less work-related restrictions than alleged.
>
> Further, although the claimant [sic] has alleged she needs assistance with virtually everything, from bathing and dressing to cooking and cleaning, and alleged she cannot stand or walk for more than a couple of minutes, upon seeing a new Rheumatologist in Maryland, when asked what increases her pain she stated "hiking." Additionally, she testified that no medications helped with her pain, but a February 2021 treatment note from her Rheumatologist indicates that she was getting a partial response from diclofenac 50mg twice daily, but she stated she does not want to take medication because she is concerned about hypertension. Further, she testified to severe pain with sitting, but treatment records contain only recent

> allegations of difficulty with sitting during her brief physical therapy and during a January 2023 initial visit with a new Spine and Pain practice.
>
> Regarding the claimant's fibromyalgia, while physical examinations at times note tenderness along trigger points of back, arms, and legs, they also at times revealed no joint tenderness, normal muscle strength and tone, intact sensation, normal deep tendon reflexes, and normal gait.

Tr. 663. The ALJ once again mentioned Plaintiff's fibromyalgia again when acknowledging neurologist Dr. Steve Ellis's treatment. This reference was limited to noting that Dr. Ellis determined that Plaintiff had "positive fibromyalgia tender points." Tr. 667.

"[P]hysical examinations [of patients with fibromyalgia] will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Arakas*, 983 F.3d at 96 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003)). In *Arakas*, the Fourth Circuit held that the ALJ erred when they relied principally on objective results such as a "full range of motion" or "lack of joint inflammation" when discounting the claimant's complaints as inconsistent with the objective evidence. *Arakas*, 983 F.3d at 96; s*ee Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").

Here, the ALJ contravened *Arakas* when they relied on objective evidence to find Plaintiff's symptoms as inconsistent. Specifically, the decision identifies normal muscle strength and tone, intact sensation, normal deep tendon reflexes, and normal gait. The ALJ's reference to Plaintiff's lack of "joint tenderness" also constituted error. Tr. 667. *Arakas* recognizes that "tenderness in specific sites on the body" may be properly assessed as objective evidence of fibromyalgia. *Arakas*, 983 F.3d at 97. However, if such evidence is considered, it must be "treated as evidence substantiating the claimant's impairment." *Id.* at 97-98. Here, the ALJ departed from that mandate by discounting the intensity of Plaintiff's fibromyalgia-related pain due, in part, to a lack of tenderness. Tr. 663. This constitutes error under *Arakas*. The Commissioner insists that the ALJ's statement regarding lack of tenderness and normal muscle and tendon observations are merely acknowledgments of the waxing and waning nature of fibromyalgia. ECF 13, at 11. But— notwithstanding that the ALJ used the terms "wax and wane" on the previous page—that interpretation that infers too much. In a different context, such statements could be read as a mere observation rather than a challenge to Plaintiff's claims. But here, the statement arises at the end of a discussion of the intensity, persistence, and limiting effects of Plaintiff's symptoms. That is, these statements occur at the end of the ALJ's multi-paragraph explanation for why they found Plaintiff's assertions of pain unfounded. The more natural reading is that the statements indicate the ALJ used these objective findings against Plaintiff.[4]

---

[4] At the very least, because there is more than one way to read this language, the Court is unable

*Natalie M. v. O'Malley*
Civil No. 23-1525-CDA
August 14, 2024
Page 6

Moreover, "while objective medical evidence is unnecessary at the second step of the symptom evaluation framework, such objective evidence *was present* in this case." *Arakas*, 983 F.3d at 96 (emphasis in original). "[T]rigger points," which *Arakas* defines as "tenderness in specific sites on the body," are "the only 'objective' signs of fibromyalgia." *Arakas*, 983 F.3d at 97. Apart from trigger-point evidence, objective evidence has "no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Id*. The ALJ in this case noted that multiple physical examinations noted trigger point findings. Tr. 667. Courts have recognized these findings "as objective medical evidence of fibromyalgia." *Arakas*, 983 F.3d at 97 (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003)).

Because Plaintiff was "entitled to rely exclusively on subjective evidence to prove" that her symptoms were "so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight-hour day," the ALJ "applied an incorrect legal standard" in discrediting her complaints based on the lack of objective evidence corroborating them. *Hines v. Barnhart*, 453 F.3d 559, 563, 565 (4th Cir. 2006). Thus, the ALJ "improperly increased [Plaintiff's] burden of proof" by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). Thus, remand is proper. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

V. **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

to conclude that the ALJ did not violate *Arakas*. "Because [the Court is] left to guess about how the ALJ arrived at his conclusions . . . remand is necessary." *Mascio*, 780 F.3d at 637.